UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:23-cv-60057-WPD

JOSHUA BERDUGO, individually and on
behalf of all others similarly situated,

    Plaintiff,

v.

GEMINI TRUST COMPANY, LLC, TYLER
WINKLEVOSS; and CAMERON
WINKLEVOSS.

    Defendants.
_____/

**DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY CLAIMS
PENDING OUTCOME OF ARBITRATION AND
<u>INCORPORATED MEMORANDUM OF LAW</u>**

Defendants, GEMINI TRUST COMPANY, LLC ("Gemini"), TYLER WINKLEVOSS ("Tyler") and CAMERON WINKLEVOSS ("Cameron') (together, "Defendants"), move to compel arbitration of the claims filed by Plaintiff, Joshua Berdugo ("Berdugo" or "Plaintiff"), and to stay the claims pending the outcome of arbitration, and state:

**INTRODUCTION**

Gemini offers an online platform for buying, selling, transferring, and storing cryptocurrencies. Plaintiff is a user of Gemini's platform. Plaintiff is also a participant in the Earn Program – a voluntary program available to Gemini users – through which Plaintiff chose to lend digital assets held on Gemini's platform to non-party Genesis Global Capital, LLC ("Genesis") in exchange for interest payments. Compl. ¶ 1. Due to events beyond Defendants' control, Genesis – who recently filed for bankruptcy – has refused to return Plaintiff's assets, resulting in Plaintiff filing this suit against Defendants.

Defendants have strong defenses to Plaintiff's claims. Risks associated with the Earn Program were plainly disclosed in the contracts Plaintiff agreed to when he signed up for the Earn Program. In addition, Plaintiff goes after the wrong parties – the wrongdoers here, if any, are Genesis and its affiliates, including its corporate parent, the Digital Currency Group, Inc., and its founder, CEO, and controlling shareholder, Barry Silbert, not Defendants.

But this motion does not involve the merits of Plaintiff's claims or lack thereof. Rather, it presents a threshold procedural issue: Plaintiff cannot bring his claims in this Court because he agreed to arbitrate them. To become a Gemini account user, and every time he logged in to Gemini's website, Plaintiff was required to indicate his acceptance to the Gemini User Agreement (the "User Agreement"). In that User Agreement, Plaintiff agreed to arbitrate "*any controversy, claim, or dispute arising out of or relating to this User Agreement or [Plaintiff's] relationship with Gemini…*" including any claims against co-defendants of Gemini. Although the Court need look no further than the User Agreement to compel arbitration in this case, Plaintiff *also* agreed to arbitration in two other agreements specific to the Earn Program. The Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA") requires Plaintiff to honor his contractual obligation. The Court should compel arbitration of Plaintiff's claims and stay this action until the arbitration concludes.

## FACTS

### I.     OVERVIEW

Gemini offers an online platform for buying, selling, transferring, and storing cryptocurrencies. Decl. ¶ 3.[1]  Tyler and Cameron Winklevoss founded Gemini. Compl. ¶ 24.

---

[1] *See* Declaration of Travis Freeman filed contemporaneously herewith in a separate Notice of Filing. Cites to Exhibits 1 through 11 refer to the exhibits attached to the Declaration.

*CASE NO.: 0:23-cv-60057-WPD*

From February 1, 2021 until November 16, 2022, Gemini offered a lending program in which registered Gemini users could elect to participate (the "Earn Program"). Compl. ¶¶ 31, 56-57; Decl. at ¶ 4. Through the Earn Program, participants such as Plaintiff were able to make an independent, purely voluntary decision to lend digital assets (e.g., cryptocurrency) to Genesis in exchange for payment of interest. Decl. ¶ 4; *see also* Compl. ¶ 31.

### II.     AGREEMENTS GOVERNING THE EARN PROGRAM

To register an account with Gemini and participate in the Earn Program, Plaintiff entered into three separate agreements: (1) the User Agreement, (2) the Earn Program Terms and Authorization Agreement (the "Authorization Agreement"), and (3) the Master Digital Asset Loan Agreement (the "Master Loan Agreement").

#### A.  **The User Agreement**

Plaintiff first registered as a Gemini user and created a Gemini account on May 12, 2021. Decl. ¶¶ 7, 11. To register and begin using Gemini's cryptocurrency platform, Plaintiff had to use Gemini's account registration webpage. *Id.* at ¶ 8, Ex. 1. On this webpage, Plaintiff was prompted and required to enter his full name, email address, and password. *Id.* ¶ 9, Ex. 1. Before proceeding any further, Plaintiff had to affirmatively check a separate box next to the language stating: "By creating this account, you agree to our User Agreement and Privacy Policy." *Id.* The underlined phrase "User Agreement" hyperlinked to the full text of the User Agreement in place at the time. *Id.* It was (and still is) impossible for an individual to create a new Gemini account without checking the box expressly indicating consent to the User Agreement. *Id.* ¶ 10.

The User Agreement terms are updated from time to time, most recently on December 15, 2022. *Id.* ¶ 12, Ex. 2. On December 16, 2022 at 6:26 p.m., Gemini sent an email to all registered users explaining that the User Agreement changed and encouraging Gemini users to

review the amended User Agreement. *Id.* ¶ 13, Ex. 3. The underlined phrase "User Agreement" hyperlinked to the full text of the amended User Agreement on Gemini's website so the individual could review it without logging into his or her account. *Id.*

If the user chose to log into his Gemini account after December 14, 2022, the "Sign In" page instructed as follows: "Our User Agreement has changed, including the Dispute Resolution provision. By clicking "Sign In" below, I agree to Gemini's USER AGREEMENT and PRIVACY POLICY." *Id.* at ¶ 14, Ex. 4.

Plaintiff logged on to his Gemini account and thus accepted the amended User Agreement on January 12, 2023. *Id.* at ¶ 15. The amended User Agreement included an agreement to arbitrate "*any controversy, claim, or dispute arising out of or relating to this User Agreement or [Plaintiff's] relationship with Gemini….*" Decl. Ex. 2 at 107-114. Plaintiff also agreed that the arbitration clause in the User Agreement "shall be grounds for stay or dismissal of any court action commenced by you with respect to a dispute…." *Id.* at 113-14. The User Agreement has at all times included and continues to include an arbitration clause. Decl. ¶ 12.

### B. The Authorization Agreement and Master Loan Agreement

Plaintiff elected to participate in the Earn Program on May 14, 2021. Decl. ¶ 18. Registration for the Earn Program also required acceptance of the Authorization Agreement and the Master Digital Asset Loan Agreement. Decl. ¶ 5.

During the online registration for the Earn Program, Plaintiff was required to "scroll down to read th[e] entire [Authorization Agreement and Master Loan Agreement] agreement before [he] accepted [their] terms." *Id.* ¶ 16-17, Exs. 5-8. Plaintiff first accepted the Authorization Agreement and the Master Loan Agreement when he signed up for the Earn Program on May 14, 2021. *Id.* ¶ 18. The Authorization Agreement and Master Loan Agreement

CASE NO.: 0:23-cv-60057-WPD

have at all times included and continue to include an arbitration clause. *Id.* ¶¶ 19-22, Ex. 9 at 14 ¶ 18, Ex. 10 at 11, ¶ X.

## ARGUMENT AND MEMORANDUM OF LAW

### I.  LEGAL STANDARD

Arbitration agreements are governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq*. The FAA "embodies a liberal federal policy favoring arbitration agreements" in order to "relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that is speedier and less costly than litigation." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005) (quotation marks omitted). Consistent with this policy, there is a presumption of arbitrability, meaning that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115-16 (11th Cir. 2014) (quotation marks omitted).

Thus, "[a] plaintiff challenging the enforcement of an arbitration agreement bears the burden to establish, by substantial evidence, any defense to the enforcement of the agreement." *Inetianbor v. CashCall, Inc.*, 923 F. Supp. 2d 1358, 1362 (S.D. Fla. 2013) (citing *Bess v. Check Express*, 294 F.3d 1298, 1306-07 (11th Cir. 2002)). In determining whether to compel arbitration, district courts must view the facts in the light most favorable to the nonmovant, *i.e.*, the party seeking to oppose arbitration. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

### II.  THE FAA REQUIRES ENFORCEMENT OF THE PARTIES' AGREEMENT TO ARBITRATE

The FAA governs any arbitration agreement that is "written" and in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. Here, both criteria are met: (i) the

arbitration agreements are in writing, and (ii) contracts related to the use of an online crypto-trading platform plainly involve interstate commerce, because "there can be no question that the Internet is a channel and instrumentality of interstate commerce." *United States v. Konn*, 634 F. App'x 818, 821 (2d Cir. 2015); *Camilo v. Lyft, Inc.*, 384 F. Supp. 3d 435, 439 (S.D.N.Y. 2019) (FAA applies to Lyft's online Terms of Use Agreement that contains an arbitration clause).

Under the FAA, Plaintiff's arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As the Supreme Court has explained, "[t]he overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). This "'liberal federal policy favoring arbitration agreements'" applies "'notwithstanding any state substantive or procedural policies to the contrary.'" *Id.* at 346 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Here, no grounds exist in law or in equity for the revocation of the arbitration agreements.

### III. PLAINTIFF CONSENTED TO ARBITRATION IN THE USER AGREEMENT

To determine whether a valid arbitration agreement has been formed, a court must "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). But only "generally applicable" contract rules apply; state-law rules that "discriminat[e]" against or "disfavor[]" arbitration agreements are preempted by the FAA. *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 251 (2017).

Plaintiff was a user of Gemini's online platform. *See, e.g.,* Compl. ¶ 20 ("Plaintiff funded his Gemini Earn account, through Gemini's website, by investing approximately

$13,000."). Decl. ¶ 7. Plaintiff necessarily agreed to the User Agreement by registering, using, and logging in to the Gemini website. Decl. ¶¶ 7, 11, 15, Ex. 2. The User Agreement includes a New York choice of law clause. Decl. Ex. 2 at 107. Accordingly, Plaintiff and Gemini agreed, at the outset, that New York law would govern their relationship. But as to the question of whether the User Agreement is a valid contract – *i.e.*, issues of contract formation – Florida law could apply. *See, e.g., Valiente v. StockX, Inc.*, No. 22-CV-22432, 2022 WL 17551090, at *3 (S.D. Fla. Dec. 9, 2022) (applying Florida law to determine whether the parties agreed to arbitrate despite a Michigan choice of law clause in the contract).

However, the Court need not decide which law applies because under either Florida or New York law Plaintiff agreed to arbitration in this User Agreement. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) ("[The court] need not engage in this circular [choice of law] inquiry," where each state's law "dictate[s] the same outcome."). Both New York and Florida properly recognize that "[t]he formation of contracts over the internet 'has not fundamentally changed the principles of contract.'" *IT Strategies Grp., Inc. v. Allday Consulting Grp., L.L.C.*, 975 F. Supp. 2d 1267, 1280 (S.D. Fla. 2013) (quoting *Register.com v. Verio, Inc.*, 356 F.3d 393, 403 (2nd Cir.2004)). Thus, just as with any type of contract, the central issue is still whether mutual assent existed between the contracting parties. *Id.*; *see also Register.com*, 356 F.3d 393 at 427.

With respect to how assent is indicated over the internet, both New York and Florida widely recognize the validity of "clickwrap agreements" which "require a user to affirmatively click a box on the website acknowledging awareness of an agreement to the terms of service before he or she is allowed to proceed with further utilization of the website." *Temple v. Best Rate Holdings LLC*, 360 F. Supp. 3d 1289, 1302 (M.D. Fla. 2018) (quoting *Berkson v. Gogo*

*LLC*, 97 F. Supp. 3d 359, 397 (E.D.N.Y. 2015)); *see also Arencibia v. AGA Serv. Co.*, 533 F. Supp. 3d 1180, 1190 n.3 (S.D. Fla. 2021), *aff'd*, No. 21-11567, 2022 WL 1499693 (11th Cir. May 12, 2022) (explaining a clickwrap agreement in the context of online purchase transaction); *Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 830-33 (S.D.N.Y. 2020). "[C]ourts generally find [clickwrap agreements] enforceable" because they require a user to "physically manifest assent" and the user "is said to be put on inquiry notice of the terms assented to." *Temple*, 360 F. Supp. 3d at 1302; *accord Feld,* 442 F. Supp. 3d 825, 832 (S.D.N.Y. 2020) (finding that a website user's notice of terms in a hyperlink was sufficient to establish an agreement to arbitrate). Once the user clicks the button and thereby assents, the agreement is binding regardless of whether the user read the agreement. *See, e.g., Segal v. Amazon.com, Inc.,* 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011) (collecting cases and holding that a plaintiff was bound by the forum selection clause in a clickwrap agreement despite claiming that he never read it).

Clickwrap-style agreements indistinguishable from Gemini's User Agreement – where the user is required to accept the agreement in order to obtain an account, access a website, or complete a purchase – are consistently enforced by this Court. *See, e.g., Valiente v. StockX, Inc.*, No. 22-CV-22432, 2022 WL 17551090, at *4 (S.D. Fla. Dec. 9, 2022) (finding an enforceable clickwrap agreement where a user had to check a box agreeing to certain terms, including arbitration, in order to create an account with the defendant); *Bachewicz v. JetSmarter*, Inc., No. 18-CV-62570, 2019 WL 1900332, at *3 (S.D. Fla. Apr. 29, 2019) (same); *see also Raw Life Organics LLC v. SBL, LLC*, No. 20-61944-CIV, 2021 WL 217765, at *7 (S.D. Fla. Jan. 6, 2021), report and recommendation adopted, No. 20-61944-CIV, 2021 WL 217076 (S.D. Fla. Jan. 21, 2021) (Dimitrouleas, J.) (enforcing an arbitration clause where (i) an online order form stated "[b]y making payment for your order, you acknowledge and agree to all of our terms and

conditions at this link", (ii) the order form included a hyperlink to the applicable terms and conditions, and (iii) the plaintiff had paid for an order).

New York courts likewise routinely uphold the same type of agreements. *See, e.g., Feld*, 442 F. Supp. 3d 825, 830-33 (S.D.N.Y. 2020) (enforcing an arbitration clause in website's terms of use that were hyperlinked and required a user to click a button indicating consent); *Hidalgo*, 468 F. Supp. 3d at 656-59 (same); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 838-41 (S.D.N.Y. 2012) (same, except that the court enforced a forum selection clause in the website's terms of service). "That the contents of the [the agreement] do not appear on the screen or that [the movant] does not require a 'user to actually examine the terms before assenting' does not change the analysis." *Feld*, 442 F. Supp. 3d at 831 (citing *Fteja*, 841 F. Supp. 2d at 837-38.)

Regardless of which state's law applies, Gemini's User Agreement, with its arbitration clause, is a textbook example of a valid and enforceable clickwrap agreement. At all times, the registration and login pages on Gemini's website notified users that, by creating an account with Gemini or logging into the account, the users "agree to Gemini's USER AGREEMENT." Decl. ¶¶ 8-9, 12, 14, Exs. 1, 4 (underline text in original). This disclosure is in the same or larger font as the rest of the webpage and uses a conspicuous black or blue (in case of hyperlinks) font against white background. *Id.* Clicking on the underlined and capitalized "USER AGREEMENT" text takes the user to a website where the User Agreement could be reviewed, in its entirety, before creating an account with Gemini or logging into the Gemini website.

Plaintiff created his account on May 12, 2021 and logged in to Gemini's website as recently as January 12, 2023. When doing so, he necessarily accepted the terms of the hyperlinked User Agreement, as amended, including its arbitration clause. Decl. ¶ 15. Plaintiff is therefore bound by the agreement to arbitrate which provides for arbitration of "*any*

*controversy, claim, or dispute arising out of or relating to this User Agreement or [Plaintiff's] relationship with Gemini…*" Decl. Ex. 2 at 107. The Court should compel arbitration.

## IV. THE USER AGREEMENT DELEGATES ISSUES OF ARBITRABILITY

The Court should not decide whether Plaintiff's allegations fall within the scope of the User Agreement's arbitration clause or any other issue beyond confirming that the parties agreed to arbitration. The Supreme Court has repeatedly held that "if a valid [arbitration] agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, *a court may not decide the arbitrability issue.*" *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (emphasis added); *see also Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center*, 561 U.S. at 70. Accordingly, "[j]ust as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein*, 139 S. Ct. at 530. And the Supreme Court "has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Id.* (quoting *First Options*, 514 U.S. at 944); *see also Attix v. Carrington Mortg. Services,* 35 F.4th 1284, 1302 (11th Cir. 2022) (enforcing a delegation clause); *Bar-Ayal v. Time Warner Cable Inc.*, No. 03 Civ. 9905 (KMW), 2006 WL 2990032, at *7-8 (S.D.N.Y. Oct. 16, 2006) (same).

The Gemini User Agreement includes "clear and unmistakable" evidence of delegation by expressly providing "that *any dispute about the scope of this User Agreement to arbitrate and/or the arbitrability of any particular dispute shall be resolved in arbitration* in accordance

with this section." Decl., Ex. 2 at 107 (emphasis added).  As a result of this delegation clause, the Court need not go further to consider whether the particular claims alleged in this action fall within the scope of the clause.

However, in case there is any doubt, Plaintiff's claims against Defendants *do* fall squarely within the scope of the arbitration clause in the User Agreement.  The User Agreement broadly provides that "**any controversy, claim, or dispute arising out of or relating to this User Agreement or your relationship with Gemini – past, present, or future – shall be settled solely and exclusively by binding arbitration**…." Decl. Ex. 2 at 107.  It further states:

> You and Gemini agree that this arbitration provision applies not just to disputes between you and Gemini but also to (a) **disputes with Gemini and any other party named or added as a co-defendant along with Gemini at any time**, and (b) disputes in which a party is named as a defendant involving claim(s) arising from or related to this User Agreement or any other Gemini agreement or program terms, even if Gemini is not named or added as a defendant. **Any such co-defendant or defendant is a third-party beneficiary entitled to enforce this arbitration provision.**

*Id.* (emphasis added).

In the Complaint, Plaintiff alleges that Defendants misrepresented or concealed the risks associated with participating in the Earn Program and did not register the Earn Program as a security. Compl. *passim*.  The Earn Program was an optional program, only available to existing users of the Gemini platform.  Decl. ¶ 16.  As noted, a person could not become a user of the Gemini platform without first accepting the User Agreement, and each user had to accept the User Agreement in order to log to Gemini's website. *Id.* ¶¶ 10, 14.  Moreover, under the Earn Program, Gemini acted as an agent of Gemini's users with respect to digital assets that the users decided to remove from Gemini's custody and lend to Genesis. *Id.* Ex. 9 at 1 (explaining that the Earn Program "allows customers…of [Gemini] to lend certain Digital Assets that you custody

with us.")

As such, Plaintiff's claims against Defendants necessarily arise out of or relate to his "relationship with Gemini" and the User Agreement, which ultimately governed Plaintiff's access to and use of the entire Gemini platform, including his ability to participate in the Earn Program. In short, Plaintiff's claims "touch matters covered" by the User Agreement and are therefore arbitrable. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n. 13 (1985); *see also Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 485 (1989) (holding that claims brought under the Securities Act of 1933 were arbitrable).

The User Agreement further provides for arbitration of claims against Gemini's co-defendants, the Winklevosses. The User Agreement expressly requires arbitration of disputes not only with Gemini, but with "*any other party named or added as a co-defendant along with Gemini*" and makes a co-defendant "*a third-party beneficiary entitled to enforce this arbitration provision.*" Ex. 2 at 108 (emphasis added). This express contract language should control. *See Hirshenson v. Spaccio,* 800 So. 2d 670, 676 (Fla. Dist. Ct. App. 2001) (holding that contract language indicating an intent to bind non-signatories to the arbitration clause was sufficient to compel arbitration as to the non-signatories).

However, even without this express agreement, the outcome would be the same. The claims against the Winklevosses arise from their alleged conduct as agents for Gemini or are so intertwined with the claims against Gemini that they would still be subject to arbitration under an agency, estoppel, or third-party beneficiary theory. *See, e.g.,* Compl. ¶¶ 105-106 (alleging that the "Winklevosses, by virtue of their office, stock ownership, and/or agreements or understanding…had the power an authority to direct the management and activities of Gemini and its employees…."). For example, "employees or disclosed agents of an entity that is a party

to an arbitration agreement are protected by that agreement." *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993). As a result, courts consistently find that a signatory company's officers, employees, and agents can compel arbitration even if they did not personally sign the agreement to arbitrate. *Id.*; *see also Alghanim v. Alghanim,* 828 F. Supp. 2d 636, 650 (S.D.N.Y. 2011) (holding that a company's chief legal officer could compel arbitration despite being a non-signatory to an arbitration agreement between the company and the plaintiff); *Martha A. Gottfried, Inc. v. Paulette Koch Real Est.*, 778 So. 2d 1089, 1090 (Fla. Dist. Ct. App. 2001) ("Non-signatories may be bound by an arbitration agreement if dictated by ordinary principles of contract law and agency.") Therefore, Plaintiff – who chose to name the Winklevosses as Gemini's co-defendants in this suit – cannot avoid arbitrating against the Winklevosses. All claims in this case, against all three Defendants, should be compelled to arbitration.

### V. PLAINTIFF ALSO CONSENTED TO ARBITRATION IN TWO OTHER AGREEMENTS

For the sake of simplicity, the Court need go no further than the User Agreement to confirm that Plaintiff agreed to arbitrate the claims alleged against Defendants in this case. The User Agreement clearly binds Plaintiff and requires arbitration of the claims in this suit because this entire action arises out of or relates to Plaintiff's relationship with Gemini. This User Agreement, the first agreement that Plaintiff and Gemini entered into together, was the overarching agreement governing the entire relationship between Plaintiff and Gemini. However, it is worth noting that Plaintiff *also* agreed to arbitration in the Authorization Agreement and the Master Loan Agreement – both of which could independently be utilized to compel arbitration in this case.

As noted above, both the Authorization Agreement and the Master Loan Agreement were

specific to the Earn Program, and an existing Gemini user was required to enter into these agreements if he or she desired to participate in the Earn Program. Plaintiff accepted the Authorization Agreement and Master Loan Agreement on May 14, 2021. Decl. ¶ 18. Both agreements also include an arbitration clause. *See* Decl. Ex. 9 at 14-20, Ex. 10 at 11. In sum, Plaintiff agreed to arbitration of his claims involving the Earn Program *three times, in three separate contracts*: the User Agreement, the Authorization Agreement and the Master Loan Agreement. There is no question that Plaintiff agreed to arbitrate his claims against Defendants. This Motion to Compel Arbitration should be granted.

### VI. THIS ACTION SHOULD BE STAYED PENDING ARBITRATION OF PLAINTIFFS' CLAIMS

When, as here, the FAA governs an arbitration provision that covers Plaintiff's claims, Section 3 of the FAA directs the district court to compel arbitration and stay those claims. *See* 9 U.S.C. § 3 (providing for a stay of court proceedings pending the resolution of arbitration); *see also, e.g.*, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). Accordingly, Defendants move to stay this case until the conclusion of the arbitration.

### CONCLUSION

For the foregoing reasons, Defendants, Gemini Trust Company, LLC, Cameron Winklevoss and Tyler Winklevoss, respectfully request that the Court enter an order: (i) compelling Plaintiff to arbitrate the claims alleged in the Complaint; (ii) staying this action pending the outcome of the arbitration; and (iii) granting Defendants any further appropriate relief.

CASE NO.: *0:23-cv-60057-WPD*

### REQUEST FOR HEARING

Defendants respectfully request a hearing on this motion. A hearing is desired and would be helpful to the Court in that this case is brought as a putative class action, involves a significant amount in controversy (over $900 million) and raises novel issues of law surrounding "crypto assets." The estimated time required for argument is 30 minutes.

### CERTIFICATE OF GOOD FAITH CONFERRAL

Pursuant to S.D. Fla. L.R. 7.1(a)(3), the undersigned hereby certifies that he conferred with Plaintiff's counsel in writing in a good faith effort to resolve by agreement the issues to be raised in this motion and they were unable to do so.

Respectfully submitted,

By: /s/ Dennis M. Campbell
Dennis M. Campbell, Esq.
Florida Bar No. 271527
Email: dcampbell@campbellmiami.com
Email: service@campbellmiami.com
CAMPBELL LAW FIRM PLLC
201 Alhambra Circle, Suite 602
Coral Gables, FL 33134
Telephone: (305) 444-6040
Facsimile: (305) 444-6041
*Counsel for Defendants*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on the 8th day of February 2023 on the parties listed on and in the method specified in the Service List below.

/s/ Dennis M. Campbell
Dennis M. Campbell

CASE NO.: *0:23-cv-60057-WPD*

## SERVICE LIST

**Jeff Ostrow, Esq./Steven Sukert, Esq.**
KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
ostrow@kolawyers.com
sukert@kolawyers.com
[VIA CM/ECF]

**David C. Silver, Esq.**
SILVER MILLER
4450 NW 126th Avenue, Suite 101
Coral Springs, Florida 33065
Telephone: (954) 516-6000
dsilver@silvermillerlaw.com
[VIA CM/ECF]

*Counsel for Plaintiff*

472045